No. 26-10302

# In the United States Court of Appeals for the Fifth Circuit

CHARLES ZIEGENFUSS; DAVID MONTGOMERY; BRIAN ROBINSON; FIREARMS POLICY COALITION, INC.,

*Plaintiffs – Appellants*,

v.

FREEMAN MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR AND COLONEL OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY,

*Defendant – Appellee*.

On Appeal from the U.S. District Court
for the Northern District of Texas, Fort Worth Division,
Case No. 4:24-cv-1049

**MOTION OF DISTRICT COURT-APPOINTED *AMICI CURIAE* ERIC RUBEN AND GREGG COSTA FOR APPOINTMENT OR FOR LEAVE TO EXCEED TYPE-VOLUME LIMIT OF RULE 29(A)(5)**


Eric Ruben
SMU DEDMAN SCHOOL OF LAW
3315 Daniel Avenue
Dallas, Texas 75205
Telephone: (214) 768-2581
*eruben@smu.edu*

Andrew Mitchell
Arjun Ogale
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
*amitchell@gibsondunn.com*
*aogale@gibsondunn.com*

Gregg Costa
Kylie Calabrese
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600
*gcosta@gibsondunn.com*
*kcalabrese@gibsondunn.com*

Blake J. Ellison
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
*bellison@gibsondunn.com*

*Counsel for District Court–Appointed Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS

No. 26-10302,
*Charles Ziegenfuss; David Montgomery; Brian Robinson; Firearms Policy Coalition, Inc. v. Freeman Martin, in his official capacity as Director and Colonel of the Texas Department of Public Safety*

The undersigned counsel of record certifies that the following listed persons or entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Plaintiffs-Appellants** | **Counsel for Appellants** |
| --- | --- |
| Charles Ziegenfuss; David Montgomery; Brian Robinson; Firearms Policy Coalition, Inc. | R. Brent Cooper<br>Samuel Hunter Walton<br>COOPER & SCULLY PC<br>900 Jackson Street, Suite 100<br>Dallas, Texas 75202<br><br>Bradley Alan Benbrook<br>Stephen Michael Duvernay<br>Jamie McWilliam<br>BENBROOK LAW GROUP PC<br>701 University Avenue, Suite 106<br>Sacramento, California 95825 |
| **Defendant-Appellee** | **Counsel for Appellee** |
| Freeman Martin, in his official capacity as Director and Colonel of the Texas Department of Public Safety | Matthew Micah Hilderbrand<br>Zachary Louis Rhines (withdrew)<br>Kyle Tebo<br>OFFICE OF THE ATTORNEY GENERAL OF TEXAS<br>PO Box 12548<br>Austin, Texas 78711 |

## CERTIFICATE OF INTERESTED PERSONS
(continued)

| District Court-Appointed Amici Curiae | Counsel for District Court–Appointed Amici Curiae |
|---|---|
| Gregg Costa; Eric Ruben | Gregg Costa<br>Kylie Calabrese<br>GIBSON, DUNN & CRUTCHER LLP<br>811 Main Street, Suite 3000<br>Houston, Texas 77002<br><br>Eric Ruben<br>SMU DEDMAN SCHOOL OF LAW<br>3315 Daniel Avenue<br>Dallas, Texas 75205<br><br>Andrew Mitchell<br>Arjun Ogale<br>Alexa Acquista<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br><br>Blake J. Ellison<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street N.W.<br>Washington, D.C. 20036 |

Respectfully submitted,

/s/ *Gregg Costa*
Gregg Costa

*Counsel of Record for District Court–Appointed Amici Curiae*

## TABLE OF CONTENTS

Page

Certificate of Interested Persons ............ i
Table of Authorities ............ iv
Introduction ............ 1
Background ............ 2
Argument ............ 4
Conclusion ............ 10
Certificate of Conference ............ 12
Certificate of Service ............ 13
Certificate of Compliance ............ 14

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adamson v. California*,
332 U.S. 46 (1947) .... 10

*Baker v. Carr*,
369 U.S. 186 (1962) .... 7

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
508 U.S. 83 (1993) .... 7

*In re Hall*,
979 F.3d 339 (5th Cir. 2020) .... 9

*Lefebure v. D'Aquilla*,
15 F.4th 670 (5th Cir. 2021) .... 10

*Maryland v. King*,
567 U.S. 1301 (2012) .... 6

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) .... 3, 4, 6, 8

*Riley v. Bondi*,
606 U.S. 259 (2025) .... 8

*United States v. Chagra*,
701 F.2d 354 (5th Cir. 1983) .... 8

*United States v. Hemani*,
608 U.S. ----, 2026 WL 1751710 (June 18, 2026) .... 6

*United States v. Rahimi*,
602 U.S. 680 (2024) .... 6

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) .... 8

*United States v. Windsor*,
570 U.S. 744 (2013) .... 7, 9

*Wittmer v. Phillips 66 Co.*,
915 F.3d 328 (5th Cir. 2019) .... 9

## TABLE OF AUTHORITIES
(continued)

Page(s)

### Statutes

Tex. Penal Code § 46.03 .......... 2

### Rules

Fed. R. App. P. 29 .......... 4, 5

Fed. R. App. P. 32 .......... 5

### Other Authorities

Louis D. Brandeis, *The Living Law*, 10 Ill. L. Rev. 461 (1916) .......... 10

13 Wright & Miller, Federal Practice & Procedure (3d ed. 2026) .......... 7

# INTRODUCTION

Plaintiffs challenge the constitutionality of three provisions of Texas law that prohibit the carrying of firearms in certain sensitive places. Before the district court, the Attorney General of Texas, representing Director Martin, sought dismissal for lack of standing but declined to defend the provisions' constitutionality. So the Honorable Mark Pittman appointed *amici* SMU Law Professor Eric Ruben and Gregg Costa to defend the merits of the laws. The district court ultimately agreed with *amici*, declared the challenged provisions constitutional, and granted summary judgment against Plaintiffs. Plaintiffs now appeal, and the Office of the Attorney General has informed *amici* that Director Martin will take the same position on appeal—filing a brief arguing for dismissal on jurisdictional grounds but not defending the district court's merits dismissal.

*Amici* have obtained consent from all parties to file an *amicus* brief defending the district court's judgment and the constitutionality of longstanding Texas laws. But adequately presenting that missing perspective—which requires careful and detailed examination of this country's history of firearm regulation—will require a longer submission

than *amici* are usually allowed. Should the Court find it appropriate to follow the district court's approach, appoint *amici* to defend the laws' constitutionality, and permit them to file a principal brief on the issue like a party ordinarily would, *amici* would welcome the opportunity. Alternatively, even absent court appointment, *amici* request leave to file an amicus brief subject to the same type-volume limitations as a party's principal brief.

## Background

Plaintiffs bring a facial challenge against a trio of provisions in the Texas Penal Code. ROA.23 ¶ 38. The challenged provisions prohibit carrying a firearm or other prohibited weapon on the premises of a business that derives 51 percent or more of its income from the sale of alcohol, Tex. Penal Code § 46.03(a)(7); on the premises where a sporting or interscholastic event is taking place, *id.* § 46.03(a)(8); and on the premises of a racetrack, *id.* § 46.03(a)(4). Plaintiffs claim that these duly enacted state laws infringe on their Second Amendment rights. ROA.23 ¶ 38.

Before the district court, Defendant-Appellee Director Martin—through his counsel, the Attorney General of Texas—asked that the case

be dismissed on justiciability grounds but did "not contest the underlying merits." ROA.132. Indeed, Director Martin argued that the challenged provisions violate the Second Amendment. ROA.162–67.

Faced with a constitutional attack on provisions of state law and a public official who declined to defend them, the district court appointed *amici* Professor Eric Ruben and Gregg Costa "to defend the merits of" the challenged provisions. ROA.181. Plaintiffs did not oppose the appointment. ROA.179, 224. Neither did Director Martin. *See* ROA.8.

After briefing and oral argument, the district court upheld the challenged provisions as constitutional. ROA.923. The court began by dispensing with Director Martin's justiciability arguments. ROA.906–08. It then addressed the merits of Plaintiffs' Second Amendment challenge.

Applying the test the Supreme Court laid out in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the court first held that the challenged provisions fell within the scope of the Second Amendment's text. ROA.908–09. That meant the provisions' constitutionality would depend on whether the provisions are "consistent with the Nation's historical tradition of firearm regulation." ROA.905

(quoting *Bruen*, 597 U.S. at 24). Following a painstaking review of historical evidence from before the Founding through the nineteenth century, the district court found that they are. *See* ROA.912–22. The district court thus declared the provisions constitutional and granted summary judgment against Plaintiffs. ROA.923.

Plaintiffs now bring their constitutional challenges to this Court. Plaintiffs' Br. at 1. The Office of the Attorney General has informed *amici* that Director Martin again intends to dispute justiciability but not defend the challenged provisions' constitutionality.

With no party advocating on behalf of the challenged provisions' constitutionality, *amici* intend to file a brief with this Court defending them. Both sides have consented to *amici* filing that brief. *See* Fed. R. App. P. 29(a)(2) (permitting *amici curiae* to file a brief when "all parties have consented to its filing").

## ARGUMENT

*Amici* aim to provide this Court with a comprehensive defense of laws that the Texas Legislature approved and the Governor signed into law. Presenting that defense will require an extensive and nuanced analysis of historical evidence, for which the typical type-volume limit for

*amicus* briefs is inadequate. Should the Court find it appropriate to follow Judge Pittman's approach and appoint *amici* to file a principal brief advocating the laws' constitutionality like a party ordinarily would, *amici* would welcome that opportunity. If not, *amici* request that their *amicus* brief be subject to the same type-volume limitations as a party's principal brief. Both sides consent to either request.

The type-volume limit on principal briefs is 13,000 words. Fed. R. App. P. 32(a)(7). An *amicus* brief is ordinarily limited to half that length, but a court may grant *amicus* permission to file a longer one. Fed. R. App. P. 29(a)(5). The shorter limit default reflects the typically "supplemental" nature of an *amicus* brief, which "should treat only matter not adequately addressed by a party." Fed. R. App. P. 29 advisory committee's note to 1998 amendments.

*Amici*'s brief will not be the typical supplemental *amicus* submission because no party will be defending the constitutionality of the challenged laws. And an adequate defense of the challenged laws requires more extensive briefing than the default *amici* limit allows. Presenting the defense of a law facing a Second Amendment attack is not a simple task. It requires careful parsing of history to demonstrate how

the contested law falls within "this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. The contested law's defender must show that the law and its "historical precursors" are "relevantly similar" in the sense of "[w]hy and how" they burden the Second Amendment right. *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S. at 28–29). That inquiry involves difficult questions like how to "apply faithfully the balance struck by the founding generation to modern circumstances," *Bruen*, 597 U.S. at 29 n.7, and what historical evidence deserves most weight, *see United States v. Hemani*, 608 U.S. ----, 2026 WL 1751710, at *6 n.3 (June 18, 2026).

Briefing before the district court reflected the complexity of this endeavor. *Amici*'s brief was over 11,000 words. *See* ROA.382–416. An appendix of the historical materials cited in *amici*'s brief was over 400 pages. *See* ROA.425–855. On appeal, *amici* plan to again defend the challenged provisions with the rigor that the Second Amendment demands. Laws enacted by Texans' elected representatives deserve nothing less. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from

effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration in original) (citation omitted)).

In that same spirit, a court confronted with a government party who declines to defend the laws in its care may appoint *amicus* to do so instead. *See United States v. Windsor*, 570 U.S. 744, 760 (2013) ("The Court adopts the practice of entertaining arguments made by an *amicus* when the Solicitor General confesses error with respect to a judgment below, even if the confession is in effect an admission that an Act of Congress is unconstitutional."); *see also* 13 Wright & Miller, Federal Practice & Procedure § 3530 (3d ed. 2026) ("[A] court may appoint a friend of the court to argue an issue that the parties cannot be led to argue in a helpful way.").

The *amicus* appointment not only provides for the defense of democratically enacted laws but also ensures the "adversarial presentation of the issues" critical to the "illumination of difficult constitutional questions." *Windsor*, 570 U.S. at 760 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *see also Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 104 (1993) (Scalia, J., concurring in part) (describing the "wisdom" of "appoint[ing] an *amicus* to argue the

unrepresented side" when a court is "faced with a complete lack of adversariness"). When it comes to the Second Amendment analysis in particular, the adversarial process—typically based on "the principle of *party* presentation"—serves to "refin[e]" a "broader historical inquiry" into a "legal inquiry" capable of judicial resolution. *Bruen*, 597 U.S. at 25 n.6 (emphasis added) (citations and internal quotation marks omitted). "Without opponents," however, "the adversary system cannot function." *United States v. Chagra*, 701 F.2d 354, 361 (5th Cir. 1983); *see also id.* at 365–66 (appointing *amicus curiae* to defend a district court's decision to seal a proceeding after the criminal defendant pled guilty and no one was adverse to newspapers that continued to challenge the decision).

For that reason, appointing *amicus* to defend unrepresented positions on points at issue has become common practice at both the Supreme Court and this Court. *See, e.g.*, *United States v. Sineneng-Smith*, 590 U.S. 371, 382 (2020) (collecting cases in which the Supreme Court "appointed *amicus curiae*[] to present argument in support of the judgment below when a prevailing party has declined to defend the lower court's decision or an aspect of it"); *Riley v. Bondi*, 606 U.S. 259, 266 (2025) ("Because the Government agreed with [the petitioner]'s position

on both issues, we appointed . . . *amicus curiae* to defend the judgment below."); Order at 1, *In re Hall*, No. 19-10345 (5th Cir. Mar. 18, 2020), Dkt. 41-1 (inviting *amicus* "to brief and argue" the nonretroactivity of a Supreme Court decision when the government conceded its retroactivity); *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 331 (5th Cir. 2019) (explaining that, because the EEOC advocated a particular interpretation of Title VII that no party contested, the court appointed *amicus curiae* to brief "the contrary interpretation").

Because Director Martin has decided not to defend laws enacted by Texans' elected representatives, the Court would benefit from appointing *amici* to advocate on those laws' behalf. *See In re Hall*, 979 F.3d 339, 342 & n.1 (5th Cir. 2020) (observing that the government's decision not to contest an issue "depriv[ed] [other] circuits of adversarial process," so the court "appointed *amicus curiae* here to present the opposing view"). Having thoroughly researched and briefed the issues for the district court, *amici* remain "prepared to defend with vigor the constitutionality of the legislative act[s]" now on appeal. *Windsor*, 570 U.S. at 760.

If the Court decides not to appoint *amici* to defend the challenged laws, however, it should still grant *amici* permission to file an ordinary

*amicus* brief but extend the type-volume limit to that for principal briefs. Only when equipped with "comprehensive briefs and powerful arguments on both sides" is "the judicial process at its best." *Adamson v. California*, 332 U.S. 46, 59 (1947) (Frankfurter, J., concurring). And court appointment or not, a comprehensive brief from *amici* will contribute vitally to "the robust exchange of competing views" that our "adversarial legal system . . . relies on . . . to ensure the discovery of truth and avoid error." *Lefebure v. D'Aquilla*, 15 F.4th 670, 674 (5th Cir. 2021); *see also id.* at 675 (explaining that "courts should welcome amicus briefs" because they help courts avoid error); Louis D. Brandeis, *The Living Law*, 10 Ill. L. Rev. 461, 470 (1916) ("[A] judge rarely performs his functions adequately unless the case before him is adequately presented."). Given the stakes and the source-intensive historical inquiry governing Second Amendment claims, a brief-length extension is appropriate.

## CONCLUSION

*Amici* welcome an appointment to defend the challenged Texas laws and the district court's decision. In the alternative, this Court should grant *amici* leave to file a brief subject to the same type-volume limitation as a principal brief.

Date: June 29, 2026

Respectfully submitted,

*/s/ Gregg Costa*
Gregg Costa
Kylie Calabrese
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600
*gcosta@gibsondunn.com*
*kcalabrese@gibsondunn.com*

Blake J. Ellison
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
*bellison@gibsondunn.com*

Eric Ruben
SMU DEDMAN SCHOOL OF LAW
3315 Daniel Avenue
Dallas, Texas 75205
Telephone: (214) 768-2581
*eruben@smu.edu*

Andrew Mitchell
Arjun Ogale
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
*amitchell@gibsondunn.com*
*aogale@gibsondunn.com*

COUNSEL FOR DISTRICT COURT-APPOINTED AMICI CURIAE

## Certificate of Conference

I certify that counsel for *amici* contacted counsel for Appellants and counsel for Appellee regarding this motion, who confirmed that this motion is unopposed. *See* 5th Cir. R. 27.4.

/s/ *Gregg Costa*
Gregg Costa

## CERTIFICATE OF SERVICE

I certify that, on June 29, 2026, a true and correct copy of the foregoing motion was served via CM/ECF on all counsel of record.

*/s/ Gregg Costa*
Gregg Costa

## Certificate of Compliance

I certify that this motion complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it was prepared in 14-point New Century Schoolbook, a proportionally spaced typeface, using Microsoft Word for Microsoft 365. This motion complies with the type-volume limitation of Rule 27(d)(2)(A) because it contains 1,948 words, excluding the parts exempted by Rule 32(f).

I certify that: (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus-scanning program and is free of viruses.

/s/ *Gregg Costa*
Gregg Costa