No. 26-10302

# In the United States Court of Appeals for the Fifth Circuit

Charles Ziegenfuss; David Montgomery; Brian Robinson; Firearms Policy Coalition, Incorporated,

Plaintiffs–Appellants,

v.

Freeman Martin, in his official capacity as Director and Colonel of the Texas Department of Public Safety,

Defendant–Appellee.

On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division

## BRIEF FOR APPELLEE


Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

Matthew M. Hilderbrand
Assistant Solicitor General
Matthew.Hilderbrand@oag.texas.gov

*Counsel for Appellee*

# Certificate of Interested Persons

No. 26-10302

Charles Ziegenfuss; David Montgomery; Brian Robinson;
Firearms Policy Coalition, Incorporated,
Plaintiffs–Appellants,

v.

Freeman Martin, in his official capacity as Director and
Colonel of the Texas Department of Public Safety,
Defendant–Appellee.

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Director Martin, as a governmental party, need not furnish a certificate of interested persons.

/s/ Matthew M. Hilderbrand
Matthew M. Hilderbrand
*Counsel for Appellee*

## Statement Regarding Oral Argument

Director Martin agrees that oral argument would assist the Court. In addition to the important constitutional arguments raised by Plaintiffs and Amici, this appeal presents several nuanced justiciability issues.

# Table of Contents

Page

Certificate of Interested Persons ..... i
Statement Regarding Oral Argument ..... ii
Table of Authorities ..... iv
Statement of Jurisdiction ..... x
Issues Presented ..... xi
Introduction ..... 1
Statement of the Case ..... 2
- I. Legal Background ..... 2
- II. Procedural Background ..... 4

Summary of the Argument ..... 8
Standard of Review ..... 9
Argument ..... 10
- I. Plaintiffs Cannot Overcome Sovereign Immunity. ..... 10
- II. Plaintiffs Cannot Establish an Article III Case or Controversy. ..... 13
  - A. Plaintiffs cannot show an imminent threat of enforcement. ..... 13
  - B. Director Martin is not adverse to Plaintiffs. ..... 15
  - C. Enjoining Director Martin is unlikely to provide redress. ..... 18
- III. Plaintiffs Waited Too Long to Seek Leave to Amend. ..... 24

Conclusion and Prayer ..... 31
Certificate of Compliance ..... 32

## Table of Authorities

Page(s)

**Cases**


*Antonyuk v. James*,
120 F.4th 941 (2d Cir. 2024) .......... 24

*Bay Area Unitarian Universalist Church v. Ogg*,
2026 WL 2209133 (5th Cir. July 31, 2026) (en banc) .......... 23

*Buchanan v. Wal-Mart Stores, Inc.*,
834 Fed. App. 58 (5th Cir. 2020) (per curiam) .......... 25

*Bullard v. Estelle*,
708 F.2d 1020 (5th Cir. 1983) (per curiam) .......... 15

*California v. Texas*,
593 U.S. 659 (2021) .......... 18, 22, 23

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
508 U.S. 83 (1993) .......... 17

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) .......... 10

*Dobbin Plantersville Water Supply Corp. v. Lake*,
108 F.4th 320 (5th Cir. 2024) .......... 18, 19, 20, 23, 24

*Flashdancer, Inc. v. Fulcher*,
2022 WL 1401438 (Tex. App.—Dallas May 4, 2022, no pet.) .......... 22

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) .......... 17

*INS v. Chadha*,
462 U.S. 919 (1983) .......... 17

*Knife Rts., Inc. v. Garland*,
2024 WL 2819521 (N.D. Tex. June 3, 2024) .......... 15

*Lewis v. Scott*,
28 F.4th 659 (5th Cir. 2022) .......... 10

*Little v. Liquid Air Corp.*,
952 F.2d 841 (5th Cir. 1992)........................................................................ 29, 30

*Lord v. Veazie*,
49 U.S. 251 (1850).................................................................................... 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................ 18, 23

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*,
195 F.3d 765 (5th Cir. 1999) ....................................................................... 27

*Mayeaux v. La. Health Serv. & Indem. Co.*,
376 F.3d 420 (5th Cir. 2004)........................................................................ 25

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) ............................................................ 8, 11, 12

*Moore v. Charlotte-Mecklenburg Bd. of Ed.*,
402 U.S. 47 (1971)................................................................................. 8, 15

*Murthy v. Missouri*,
603 U.S. 43 (2024).......................................................... 8, 19, 20, 21, 23, 24

*Muskrat v. United States*,
219 U.S. 346 (1911) ................................................................................... 15

*Nat'l Press Photographers Ass'n v. McCraw*,
90 F.4th 770 (5th Cir. 2024) ........................................... 8, 9, 10, 11, 12, 14, 15

*Newsome v. Int'l Paper Co.*,
123 F.4th 754 (5th Cir. 2024) .................................................... 25, 28, 30

*Overseas Inns S.A. P.A. v. United States*,
911 F.2d 1146 (5th Cir. 1990)..................................................... 25, 28, 29

*Parish v. Frazier*,
195 F.3d 761 (5th Cir. 1999) (per curiam) .......................................................9

*Pool v. City of Houston*,
87 F.4th 733 (5th Cir. 2023) ................................................................ 8, 15, 16

*Riley v. Bondi*,
606 U.S. 259 (2025) .......... 17

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
315 F.3d 533 (5th Cir. 2003) .......... 25, 27

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .......... 16

*Shaw v. Restoration Hardware, Inc.*,
93 F.4th 284 (5th Cir. 2024) .......... 25, 28

*Sossamon v. Lone Star State of Texas*,
560 F.3d 316 (5th Cir. 2009) .......... 12

*In re Southmark Corp.*,
88 F.3d 311 (5th Cir. 1996) .......... 28

*United States ex rel. Spicer v. Westbrook*,
751 F.3d 354 (5th Cir. 2014) .......... 24

*Stewart v. City & Cnty. of San Francisco*,
2023 WL 2064162 (9th Cir. Feb. 17, 2023) .......... 28

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 14

*Sw. Bell Tel. Co. v. City of El Paso*,
346 F.3d 541 (5th Cir. 2003) .......... 25

*Tex. All. for Retired Ams. v. Scott*,
28 F.4th 669 (5th Cir. 2022) .......... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 13

*United States v. Windsor*,
570 U.S. 744 (2013) .......... 16

*Wang v. Paxton*,
161 F.4th 357 (5th Cir. 2025) .......... 14

*West Virginia v. EPA*,
597 U.S. 697 (2022) ........ 17

*Westfall v. Miller*,
77 F.3d 868 (5th Cir. 1996) ........ 3

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) ........ 10

*Wolford v. Lopez*,
116 F.4th 959 (9th Cir. 2024) ........ 24

*Ex parte Young*,
209 U.S. 123 (1908) ........ 8, 10, 13

*Zaidi v. Ehrlich*,
732 F.2d 1218 (5th Cir. 1984) ........ 30

**Constitutions**

Tex. Const. art. V, § 21 ........ 3

Tex. Const. art. V, § 23 ........ 3

**Statutes**

8 U.S.C. § 1227(a)(2)(A)(iii) ........ 13

42 U.S.C. § 1983 ........ 4

42 U.S.C. § 1988 ........ 4

Tex. Code Crim. Proc. art. 2A.001 ........ 3

Tex. Code Crim. Proc. art. 2A.051 ........ 3

Tex. Code Crim. Proc. art. 2A.063 ........ 3

Tex. Code Crim. Proc. art. 2A.102 ........ 3

Tex. Gov't Code § 411.002(a) ........ 3

Tex. Gov't Code § 411.186(a)(3) ........ 12

Tex. Gov't Code § 411.187(a)(1) .......... 12

Tex. Gov't Code § 411.2031 .......... 22

Tex. Penal Code § 30.05 .......... 3, 23

Tex. Penal Code § 30.07 .......... 3, 23

Tex. Penal Code § 46.03(a)(4) .......... 2

Tex. Penal Code § 46.03(a)(7) .......... 2

Tex. Penal Code § 46.03(a)(8) .......... 2

Tex. Penal Code § 46.03(g) .......... 2

Tex. Penal Code § 46.15(o) .......... 3, 23

**Regulations**

37 Tex. Admin. Code § 1.11(e) .......... 3

**Rules**

Fed. R. Civ. P. 15(a)(2) .......... 24, 28

Fed. R. Civ. P. 16(b)(4) .......... 25, 30

Fed. R. Civ. P. 56(c)(1) .......... 23

**Other Authorities**

American Airlines Center, Arena FAQs, "Firearms/Concealed Handguns," https://perma.cc/6CJ6-FSX7 .......... 21

AT&T Stadium, Bag Policy, "Prohibited Items," https://perma.cc/UJF4-JL49 .......... 21

Dallas Indep. Sch. Dist, Dallas ISD Employee Handbook, https://www.dallasisd.org/departments/human-capital-management/departments/policy-and-compliance/employee-handbook .......... 21

Fort Worth Indep. Sch. Dist., Fort Worth ISD Employee Handbook 2025–2026, https://www.fwisd.org/departments/employee-services/employee-handbook ........ 21

Lone Star Park, Frequently Asked Questions, "What Items are Prohibited," https://perma.cc/S68J-Y5UW ........ 21

Press Release, State Fair of Texas, State Fair of Texas Announces Safety & Security Measures for 2024 Event (Aug. 8, 2024), https://perma.cc/S73Y-8738 ........ 21

Retama Park, Training Center "Work/Train & Go" Terms and Conditions, https://perma.cc/DC46-53A2 ........ 21

Sam Houston Race Park, About Us, "Rules & Regulations for Sam Houston Race Park," https://www.shrp.com/about-us ........ 21

Southern Methodist University, University Policy Manual, "Weapons," https://perma.cc/RZ2F-2HJ9 ........ 22

# Statement of Jurisdiction

The district court possessed subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs alleged that Texas law violates the Second and Fourteenth Amendments to the United States Constitution. ROA.13 (¶ 6); ROA.22–23 (¶¶ 33–39).

This Court possesses appellate jurisdiction under 28 U.S.C. § 1291 because the notice of appeal was timely filed on the same day as the district court's entry of final judgment on March 24, 2026, disposing of all claims against all parties. ROA.924 (Final Judgment); ROA.925 (Notice of Appeal).

As explained in further detail below, however, the district court erred in finding this case justiciable. This Court has jurisdiction to determine its own jurisdiction, as well as that of the district court. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

## Issues Presented

1. Whether Director Martin is entitled to sovereign immunity because he has not demonstrated a willingness to enforce the challenged laws.
2. Whether Article III's case-or-controversy requirement is met given that:
   - A. Director Martin has not enforced the challenged laws and will not enforce them since he agrees that they are unconstitutional.
   - B. Director Martin agrees with Plaintiffs on the merits of their constitutional claims.
   - C. Local officials and private parties remain free to prevent Plaintiffs from carrying firearms in the locations covered by the challenged laws even if Director Martin is enjoined.
3. Whether the district court abused its discretion in denying Plaintiffs leave to amend when they: agreed to the scheduling order; waited to seek leave to amend until after the parties had finished briefing and after the court had appointed Amici; and informed the district court that their proposed amendments would have no impact on the issues before the court.

## INTRODUCTION

A public-interest group and three individuals sued Freeman Martin in his official capacity as Director of the Texas Department of Public Safety, arguing that several Texas firearm laws are facially unconstitutional under the Second Amendment.

Director Martin agrees.

But because both sides agree that the challenged laws are unconstitutional, this lawsuit is not justiciable in federal court. Director Martin should have prevailed on justiciability grounds rather than on the merits.

## Statement of the Case

### I. Legal Background

**A.** Plaintiffs' lawsuit is a pre-enforcement, facial challenge to three restrictions on the possession of firearms under Texas Penal Code § 46.03(a). The statute lists places where weapons are prohibited, such as schools, polling locations during voting hours, airports, prisons, hospitals, and so on, subject to limited exceptions. Plaintiffs challenge three of the statute's location-based restrictions. ROA.16–17.

**1.** Racetracks.

Texas Penal Code § 46.03(a)(4) is the first challenged law. This subsection prohibits possessing a firearm "on the premises of a racetrack." *Id.* § 46.03(a)(4).

**2.** 51 Percent Establishments.

Texas Penal Code § 46.03(a)(7) is the second challenged law. This subsection bars the possession of a firearm "on the premises of a business that has a permit or license issued under Chapter[s] 25, 28, 32, 69, or 74, Alcoholic Beverage Code, if the business derives 51 percent or more of its income from the sale or service of alcoholic beverages for on-premises consumption[.]" *Id.* § 46.03(a)(7).

**3.** Sporting & Interscholastic Events.

Texas Penal Code § 46.03(a)(8) is the third challenged law. This subsection is a ban on possessing a firearm "on the premises where a high school, collegiate, or professional sporting event or interscholastic event is taking place, unless the person is a participant in the event and a firearm . . . is used in the event." *Id.* § 46.03(a)(8).

The statute provides that carrying a firearm or other prohibited weapon at any of the foregoing locations is punishable as a crime. *See id.* § 46.03(g).

**B.** The Texas Department of Public Safety (DPS) is "an agency of the state to enforce the laws protecting the public safety and provide for the prevention and detection of crime." Tex. Gov't Code § 411.002(a). The Director of DPS is "the highest law enforcement official in the state of Texas." *Westfall v. Miller*, 77 F.3d 868, 872 n.1 (5th Cir. 1996). But he is not the only relevant official.

Texas has a decentralized system of law enforcement. The Texas Constitution established the offices of county attorneys, district attorneys, and sheriffs, who bear primary responsibility for law enforcement. *See* Tex. Const. art. V, §§ 21, 23. The Texas Legislature has provided that local authorities have primary responsibility for enforcement of all criminal laws in the State. *See* Tex. Code Crim. Proc. art. 2A.102 (district attorneys); *id.* art. 2A.063 (sheriffs).

DPS regulations "recognize[] that the basic responsibility for the enforcement of the criminal laws rests with the local officers in their respective jurisdictions" and that DPS is "to leave the basic responsibility to them unless specifically assigned to do otherwise." 37 Tex. Admin. Code § 1.11(e). Even though DPS is not the primary enforcer of the three challenged laws, DPS technically could enforce them. *See* Tex. Code Crim. Proc. arts. 2A.001(4), 2A.051; Tex. Gov't Code § 411.002(a).

**C.** Apart from public law enforcement, Texas law lets private property owners, leaseholders, and proprietors restrict the right to carry firearms on premises. Relevant here, Texas law protects the right of a person to prohibit possession of a firearm on his or her property by posting a sign. Tex. Penal Code §§ 30.05–30.07, 46.15(o). As discussed later, there is evidence that proprietors are exercising their right to prohibit the possession of firearms on their premises. *See* ROA.159–161.

## II. Procedural Background

**A.** On October 28, 2024, Plaintiffs filed a complaint against Steven McCraw in his official capacity as then-Director of DPS. ROA.12. Plaintiffs' complaint named no other defendants.

Plaintiffs asserted a single claim against then-Director McCraw under 42 U.S.C. § 1983, alleging that the three challenged laws are facially unconstitutional under the Second and Fourteenth Amendments to the United States Constitution. ROA.22. Plaintiffs demanded as relief: (1) a declaratory judgment that the challenged laws are unconstitutional; (2) a permanent injunction against enforcement of the challenged laws; and (3) their costs and attorneys' fees under 42 U.S.C. § 1988 for bringing their lawsuit. ROA.24.

On December 1, 2024, Steven McCraw retired from his position as Director of DPS. Freeman Martin began his service as Director of DPS and was substituted as the defendant in this litigation. ROA.70. Director Martin is still the sole defendant in this lawsuit.

**B.** On February 11, 2025, the parties agreed with the district court that all of the issues presented in this lawsuit are purely legal and agreed to proceed straight to summary-judgment briefing. ROA.78–83. The district court thus ordered the parties to file cross-motions for summary judgment and set a briefing schedule. ROA.83.

On April 16, 2025, Plaintiffs filed their motion. ROA.84. Plaintiffs argued that summary judgment is proper because theirs is a facial challenge, no facts are in dispute, and Director Martin "*admitted*" that the challenged laws would not survive Second Amendment scrutiny. ROA.96–97. Plaintiffs briefed their constitutional

arguments and concluded by requesting that the district court declare that the three challenged laws violate the Second Amendment "and enjoin Defendant from enforcing them." ROA.109.

Also on April 16, Director Martin filed his cross-motion. ROA.132. He agreed that the challenged laws violate the Second Amendment and stated that "the parties are not adverse on the merits." ROA.144. His brief went further and argued that the challenged laws violate the Second Amendment. ROA.162–167. Director Martin's brief flagged several "justiciability problems," however, and stated that the lawsuit should be dismissed as a result. ROA.144.

**C.** On April 22, 2025, the district court ordered an additional round of briefing on the justiciability issues and announced its intent to appoint an amicus to defend the challenged laws since Director Martin declined to "contend with the merits" of Plaintiffs' Second Amendment challenge. ROA.176–177. Neither side objected to the court's proposal. Thus, "to assist with its decision-making via an adversarial process," the district court appointed Amici to defend the challenged laws: Professor Eric Ruben and the Honorable Gregg Costa. ROA.181.

The parties resumed briefing their respective motions for summary judgment and filed their oppositions on May 14, 2025. ROA.183; ROA.195.

**D.** On May 15, 2025, Plaintiffs responded to the court's order appointing Amici and to Director Martin's briefing by notifying the court that they "intend to request that the Court grant them leave to amend their complaint to name additional defendants" to solve some of the justiciability issues. ROA.224. Plaintiffs suggested that "this development may impact the issue of appointing *amici* to defend the merits, as

one or more of the additional defendants may oppose Plaintiffs' requested relief on the merits," unlike Director Martin. ROA.224.

The parties resumed briefing their respective motions for summary judgment and filed their replies on May 28, 2025. ROA.235; ROA.249.

On June 26, 2025, Plaintiffs filed a motion for leave to amend their complaint. ROA.264. The proposed amended complaint would add numerous new defendants, such as sheriffs and district attorneys, as well as the Executive Director of the Texas Alcoholic Beverage Commission. ROA.271. Director Martin opposed the motion for leave, arguing that the proposed new complaint expanded the issues in the case *after* the parties had already fully briefed summary-judgment motions. ROA.331.

On July 24, 2025, the district court denied Plaintiffs' request to file an amended complaint. ROA.362. The court agreed with Director Martin that adding new parties and statutes at this stage would constitute "a sweeping change to this lawsuit" too late in the proceedings. ROA.362.

**E.** On September 12, 2025, Amici filed their brief defending the challenged laws on the merits. ROA.372. First, Amici argued that Plaintiffs picked an uphill battle by bringing a pre-enforcement, facial challenge. ROA.395. Second, Amici argued that firearm restrictions in sensitive places are presumptively constitutional. ROA.396. Third, Amici argued that each of the challenged laws is consistent with traditional regulation of firearms in places like schools, places of amusement, and venues where alcohol is sold. ROA.398. Amici submitted an appendix in support containing more than 400 pages of exhibits. ROA.419. Plaintiffs were permitted to, and did, reply to Amici's brief. ROA.856.

On December 11, 2025, the district court held a hearing on the parties' dueling motions for summary judgment. ROA.927.

**F.** On March 24, 2026, the district court issued its ruling. ROA.902. First, the court rejected Director Martin's justiciability arguments. ROA.906–908. Second, the court agreed with Amici that the challenged laws are consistent with the Second Amendment because they are consistent with traditional regulations on the possession of firearms in sensitive places. ROA.908–923. Having ruled for Director Martin on the merits of Plaintiffs' sole claim, the court entered a final judgment. ROA.924.

Plaintiffs immediately filed a notice of appeal. ROA.925.

## Summary of the Argument

The district court correctly ruled in Director Martin's favor, but it should have done so on justiciability grounds.

**I.** Director Martin is entitled to sovereign immunity. The *Ex parte Young* exception does not apply because Plaintiffs cannot show that he has a "demonstrated willingness" to enforce the challenged laws. *See Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 786–787 (5th Cir. 2024); *Mi Familia Vota v. Ogg*, 105 F.4th 313, 329–331 (5th Cir. 2024).

**II.** There was no Article III case or controversy below. **(A)** Plaintiffs cannot establish an injury-in-fact via a substantial threat of prosecution or enforcement by Director Martin, since he has not enforced the challenged laws and agrees that they are unconstitutional. **(B)** Separately, because Director Martin agrees with Plaintiffs on the merits of their challenge, there was no case or controversy in the district court. *See Moore v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 47, 47–48 (1971); *Pool v. City of Houston*, 87 F.4th 733, 733–734 (5th Cir. 2023). **(C)** Finally, Plaintiffs cannot show redressability because local law enforcement and private property owners remain free to bar Plaintiffs from carrying firearms on their premises regardless of whether Director Martin is enjoined. *See Murthy v. Missouri*, 603 U.S. 43, 73 (2024).

**III.** The district court did not abuse its discretion in denying Plaintiffs leave to amend their complaint when they waited until after briefing was complete and the Amici were appointed to seek leave, and told the court that their proposed amendments would not impact the justiciability analysis anyway.

## Standard of Review

This Court reviews summary-judgment rulings de novo. *Nat'l Press*, 90 F.4th at 781. Cross-motions for summary judgment are considered separately. *Id.* Questions of law, including sovereign immunity and standing, are reviewed de novo. *Id.*

The district court's denial of leave to amend is reviewed for abuse of discretion. *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (per curiam).

## Argument

Although Director Martin agrees with Plaintiffs that the three challenged laws are unconstitutional and should not be enforced, Director Martin highlights several jurisdictional problems with the decision below.

## I. Plaintiffs Cannot Overcome Sovereign Immunity.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). "The Supreme Court has recognized that sovereign immunity also prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

"As an exception to the general rule of state sovereign immunity, *Ex parte Young* permits plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law." *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022). "The officer sued," however, "must have 'some connection with the enforcement of the [challenged] act.'" *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).

This Court recognizes "three guideposts" to guide the some-connection test. *Nat'l Press*, 90 F.4th at 785. "First, an official must have more than the general duty to see that the laws of the state are implemented. Second, the official must have the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. Third, enforcement means compulsion or constraint." *Id.* at 785–786 (internal quotation marks and footnotes omitted) (citing *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)).

At issue here is the second guidepost: a demonstrated willingness to enforce the challenged law. In conducting the analysis, this Court "consider[s] the prior or contemporaneous affirmative acts of the named official." *Mi Familia Vota*, 105 F.4th at 330. "This is consistent with *Ex parte Young*'s foundational requirement that a violation of federal law be *ongoing*." *Id.*

In a recent pre-enforcement lawsuit against the former DPS Director, this Court held that the plaintiffs could not establish a "demonstrated willingness" when they failed to show "even a scintilla of enforcement" of the challenged law by DPS. *Nat'l Press*, 90 F.4th at 786. And in another case, this Court held that the official's offer to stipulate to non-enforcement of the challenged law showed the official's "*un*willingness to enforce" the challenged law. *Mi Familia Vota*, 105 F.4th at 330.

Here, Plaintiffs cannot carry their burden to show "even a scintilla of enforcement" of the three challenged laws by Director Martin. *See Nat'l Press*, 90 F.4th at 786. As Director Martin argued below, Plaintiffs have not put forward any evidence that DPS actually enforces the laws in question. ROA.150–151; ROA.253–256. In their response to Director Martin's motion for summary judgment, Plaintiffs did not point to any evidence that DPS enforces the laws. *See* ROA.204–206. Neither did the district court. *See* ROA.907–908. At most, Plaintiffs have noted that DPS *could* enforce the challenged laws if Director Martin ever chose to enforce them. ROA.207–208. Plaintiffs' opening brief in this appeal also does not point to evidence that DPS has ever enforced the challenged laws. *See* Appellants' Br. at 13–14 (ECF No. 16). And under this Court's precedent, failure to identify "even a scintilla of

enforcement" of the laws challenged in this pre-enforcement lawsuit requires upholding sovereign immunity. *See Nat'l Press*, 90 F.4th at 786.

Moreover, Director Martin has gone beyond mere disavowal of enforcement—he has conceded and even *argued* that the challenged laws violate the Constitution. ROA.162–167. In doing so, he has confirmed his "*un*willingness to enforce" the challenged laws. *See Mi Familia Vota*, 105 F.4th at 330.

The Court should not assume that Director Martin will act contrary to his word. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (noting that "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties"). Nor should this Court consider the actions of local law enforcement or other officials when evaluating whether Plaintiffs have met their burden to show demonstrated willingness to enforce the challenged laws. *See Mi Familia Vota*, 105 F.4th at 331 ("[O]ur focus is on Ogg's actions, not on those of other officials."). For these reasons, Plaintiffs cannot rely on prosecutions by local officials to attempt to show Director Martin's willingness to enforce the challenged laws. *See* ROA.244 (Pls.' Reply in Support of Their MSJ).

Plaintiffs also cannot rely on their suggestion to the district court that Director Martin enforces Texas Government Code §§ 411.186(a)(3) and 411.187(a)(1)—two statutes not at issue in this case—and thus *indirectly* enforces the three challenged laws on the "back end." *See* ROA.207–208 (Pls.' Opp'n to Dir. Martin's MSJ). Those statutes require DPS to revoke or suspend gun licenses for individuals who have been convicted under § 46.03. Plaintiffs' argument fails because they have not

shown that Director Martin has a demonstrated willingness to enforce even these laws as applied to the three challenged laws. Moreover, suspension and revocation are follow-on consequences of a conviction, just like removal from the United States is a consequence of a conviction for an alien. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that conviction for aggravated felony renders an alien deportable). The enforcement connection is too tenuous for purposes of *Ex parte Young*. Nobody would say that U.S. Immigration and Customs Enforcement enforces federal and state criminal law simply because ICE processes the follow-on consequences of a criminal conviction. The same goes here.

In sum, the district court erred in denying Director Martin sovereign immunity because Plaintiffs failed to show any enforcement of the challenged laws by DPS and, additionally, because Director Martin disavowed enforcement of the challenged laws because they are unconstitutional.

## II. Plaintiffs Cannot Establish an Article III Case or Controversy.

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs are unable to satisfy the first and third elements in this pre-enforcement, facial challenge.

### A. Plaintiffs cannot show an imminent threat of enforcement.

"An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical. An allegation of future

injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citations omitted).

"To show an injury in the pre-enforcement context, [Plaintiffs] must show that 'the threat of future enforcement . . . is substantial.'" *Wang v. Paxton*, 161 F.4th 357, 361 (5th Cir. 2025) (quoting *Nat'l Press*, 90 F.4th at 782). "In the absence of any imminent or even credible threat of prosecution . . . , Plaintiffs lack standing to preemptively challenge" the laws at issue here. *Nat'l Press*, 90 F.4th at 782.

This Court has held that plaintiffs lack standing to bring a pre-enforcement challenge if the governmental defendant "has repeatedly disavowed applying the statute to" the plaintiff. *Wang*, 161 F.4th at 362. Under such circumstances, there is no credible threat of future enforcement. *Id.*

Here, Director Martin has repeatedly disavowed enforcement of the challenged laws, insisting that they are unconstitutional. "By the [Director's] own in-court admissions, [Plaintiffs] fac[e] no threat of enforcement." *Id.* Accordingly, Plaintiffs do not have standing to bring this pre-enforcement challenge.

Plaintiffs note (at 13 n.5) that the district court did not address the injury-in-fact issue but argue that they have a sufficient injury-in-fact because they confirmed their intention to engage in conduct proscribed by the challenged laws. The case law they cite in support, however, arises in the First Amendment context. That is not enough to establish standing in this Second Amendment case. As this Court has observed on more than one occasion, standing for pre-enforcement challenges is relaxed for First Amendment cases only. *See*, *e.g.*, *id.* at 362 ("Plaintiffs enjoy a presumption of

enforcement only in the First Amendment context."); *Nat'l Press*, 90 F.4th at 782–783 (similar). Without the First Amendment enhancement, Plaintiffs' generalized fear of prosecution, *see* ROA.115–116 (Ziegenfuss Decl.); ROA.119 (Robinson Decl.); ROA.123 (Montgomery Decl.), is insufficient to carry the day, *see*, *e.g.*, *Knife Rts., Inc. v. Garland*, No. 4:23-CV-00547-O, 2024 WL 2819521, at *4 (N.D. Tex. June 3, 2024) (holding in a similar pre-enforcement challenge that the Second Amendment plaintiffs failed to carry their summary-judgment burden to show a substantial threat of prosecution under federal ban on switchblades).

In sum, Plaintiffs lack standing to bring this pre-enforcement challenge against Director Martin because they cannot show a substantial threat of future enforcement of the challenged laws.

### B. Director Martin is not adverse to Plaintiffs.

Director Martin's agreement with Plaintiffs on the merits of their constitutional challenge poses another Article III problem: There was no case or controversy in the proceedings below.

"It is well settled that, where the parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy." *Pool*, 87 F.4th at 733–734. When "both litigants desire precisely the same result, namely a holding that the [challenged] statute is [un]constitutional[,] [t]here is . . . no case or controversy within the meaning of Art[icle] III of the Constitution." *Moore*, 402 U.S. at 47–48 (citing *Muskrat v. United States*, 219 U.S. 346 (1911)); *see also Lord v. Veazie*, 49 U.S. 251, 255 (1850) (no case or controversy where parties sought a judicial opinion on a question about which both sides agreed); *Bullard v. Estelle*, 708 F.2d 1020, 1023 (5th

Cir. 1983) (per curiam) (when "both parties now 'affirmatively desire the same result, no justiciable case is presented,' and we must dismiss the case for lack of a case or controversy" (citation omitted)).

Here, Director Martin agrees with Plaintiffs that the three challenged laws are unconstitutional and that they should not be enforced. The district court's opinion below regarding the constitutionality of the three challenged laws is therefore purely advisory. Accordingly, this Court should "vacate the judgment and remand with instructions to dismiss the suit without prejudice." *Pool*, 87 F.4th at 733.

Amici can sharpen the presentation of legal issues, but they do not substitute for a party with a concrete stake in the litigation. This lawsuit is unlike cases in which the U.S. Supreme Court has appointed amici and found a justiciable case or controversy despite the government's agreement with challengers on the merits of a constitutional question. In such cases, there remained a concrete stake despite the government's refusal to defend a law on the merits. In *Windsor*, for example, the concrete stake was the refund that the federal government refused to return. *See United States v. Windsor*, 570 U.S. 744, 757–758 (2013). In *Seila Law*, there was an outstanding civil investigative demand that needed to be complied with. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 212–213 (2020). This pre-enforcement case involves nothing of the sort.

This case is also unlike other cases in which the Supreme Court found a case justiciable despite parties' agreement on the merits. In such cases, the parties still had a concrete, real-world stake in the litigation. In *Chadha*, for example, although the governmental defendant agreed with the challenger that "the statute in question

is unconstitutional," there remained a case or controversy because one party faced deportation. *See INS v. Chadha*, 462 U.S. 919, 931, 936 (1983). In *Cardinal Chemical Company*, the parties "agree[d] on the correct answer to the question presented," but "only so that they can reach their true dispute: the validity of [the respondents'] two patents." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 88 n.9 (1993). Here, in contrast, there is no deportation or patent validity—nothing—at stake between Plaintiffs and Director Martin, who has not sought to enforce the challenged laws against them and agrees that the laws should never be enforced because they are unconstitutional. Accordingly, there was no case or controversy below.

The Court should not be persuaded otherwise by cases in which an amicus was appointed *on appeal* to defend a judgment that the appellee refused to defend. For example, in *Riley v. Bondi*, the Supreme Court appointed an amicus "to defend the judgment below" because the government defendant agreed with the challenger. 606 U.S. 259, 266 (2025). Such cases concern standing at the *appellate-court* level—that is, standing to challenge a judgment below—rather than standing at the *trial-court* level, which is the requirement that a case or controversy exist at the outset of the case. *See West Virginia v. EPA*, 597 U.S. 697, 718 (2022). Nobody contests that the appellants have standing to litigate the district court's final judgment. *See Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 432–433 (2019) (appellate standing is satisfied when the injury is the underlying judgment). What was missing in this case, however, is a case or controversy in the underlying proceedings that gave rise to the final judgment from which Plaintiffs now appeal.

Finally, the district court appeared to believe that the parties still had a concrete stake in the litigation because Director Martin raised "standing arguments" in opposition to Plaintiffs' claims. ROA.177 (n.2). Respectfully, that reasoning proves too much. If that were the rule, then a case could *never* be dismissed for lack of a case or controversy—because even when standing is lacking, the parties would still dispute the lack of standing. Therefore, the Court should not find standing in this case simply because the parties dispute standing.

Because there was no case or controversy below, this Court should vacate the order below and remand with instructions to dismiss for lack of jurisdiction.

### C. Enjoining Director Martin is unlikely to provide redress.

Finally, even if Plaintiffs could establish an injury-in-fact and adversity among the parties, they nevertheless have a redressability problem.

"To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (internal quotation marks omitted). "Remedies, however, ordinarily operate with respect to specific parties." *Id.* at 672 (internal quotation marks omitted). Plaintiffs must show that it is "likely" their injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Two precedents are particularly relevant in this case. First, this Court has held that an injunction against *statewide* authorities would not provide redress when *local* authorities independently can cause the plaintiffs' injury. *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 326 (5th Cir. 2024). Second, the Supreme Court has held that injunctive relief against *governmental* defendants is unlikely to provide

redress when *private* parties independently can cause the plaintiffs' injury. *Murthy*, 603 U.S. at 73.

In *Dobbin*, a water utility had the exclusive right to provide water in one part of rural Texas while it was paying off certain federal loans. 108 F.4th at 323. Two developers inside the utility's region petitioned the Public Utility Commission of Texas (a statewide governmental defendant) to release them from the utility's monopoly, arguing that they were not receiving water service. *Id.* PUC granted the developers the requested release by decertifying them from the water utility's territory. *Id.* at 324. The developers subsequently obtained water from municipal providers. *Id.* The water utility sued the PUC commissioners in federal district court, seeking to enjoin PUC from enforcing its decertification orders. *Id.* This Court agreed with the district court that redressability was lacking because enjoining the PUC officials from further enforcement of the decertification orders would not redress the water utility's injury. *Id.* at 326. In relevant part, this Court reasoned that since the municipal providers (local government non-parties) could provide water to the developers regardless of PUC's (statewide defendant) approval, enjoining PUC "would be pointless." *Id.*

In *Murthy*, the plaintiffs sued "dozens of Executive Branch officials and agencies, alleging that [the governmental defendants] pressured [social media] platforms to suppress protected speech in violation of the First Amendment." 603 U.S. at 49. "The requested judicial relief [was] an injunction stopping [the] Government agencies and employees from coercing or encouraging the platforms to suppress speech." *Id.* at 73. But even though an injunction could prevent the governmental defendants from coercing social media platforms to enforce government speech policies, the

Court found redressability lacking because the social media platforms "remain[ed] free to enforce, or not to enforce, those policies." *Id.* at 73. The Court found persuasive the evidence that Facebook, one of the social media companies involved, had restricted a plaintiff's speech despite the federal government's winding down of censorship activities. *Id.* at 74. Since the social media platforms "remain[ed] free to enforce, or not to enforce," censorship policies, the Court concluded that the plaintiffs had a fatal "redressability problem" because enjoining the governmental defendants was "unlikely" to affect the private parties' own activities. *Id.* at 73–74.

Here, Plaintiffs seek to exercise their constitutional right to carry their firearms at racetracks, in establishments where alcohol is the primary source of revenue, and at sports venues. Plaintiffs, however, have sued only Director Martin. As explained, DPS is not the primary enforcer of the challenged laws; local law enforcement does that. As in *Dobbin*, even if a *statewide* defendant like Director Martin were inclined to enforce the challenged laws, enjoining him alone "would be pointless" because *local* officials remain free to enforce the challenged laws without his approval. *See Dobbin*, 108 F.4th at 326. Further, as in *Murthy*, private parties who are not named in this lawsuit independently can restrict Plaintiffs from exercising their right to carry firearms while on premises. Thus, even if Plaintiffs were to secure injunctive relief against Director Martin, such relief is "unlikely" to redress their injury because private non-parties "remain free to enforce, or not to enforce," restrictions on Plaintiffs' right to carry firearms at the locations covered by the challenged laws. *See Murthy*, 603 U.S. at 73–74.

Additionally, as in *Murthy*, Director Martin pointed to evidence showing that private parties *are* independently prohibiting firearms on their property regardless of governmental enforcement. ROA.159–161. Owners of racetracks in the areas where the individual Plaintiffs live—in the Dallas-Fort Worth area, ROA.14—forbid firearms.[1] The same goes for major sports arenas.[2] And school districts.[3] And local

[1] *See* Sam Houston Race Park, About Us, "Rules & Regulations for Sam Houston Race Park," https://www.shrp.com/about-us (last visited Aug. 12, 2026) (banning "Weapons of Any Kind"); Retama Park, Training Center "Work/Train & Go" Terms and Conditions, https://perma.cc/DC46-53A2 ("No firearms shall be allowed on premises of RETAMA."); Lone Star Park Frequently Asked Questions, "What Items are Prohibited," https://perma.cc/S68J-Y5UW ("In accordance with penal code 30.06 & 30.07, no firearms are allowed on Lone Star Park property at any time."); ROA.173 ("Gillespie County Fair does not permit members of the public to carry or possess firearms at its horse races or on the premises of its racetrack."); ROA.175 (same).

[2] *See*, *e.g.*, American Airlines Center, Arena FAQs, "Firearms/Concealed Handguns," https://perma.cc/6CJ6-FSX7 ("Firearms and/or Concealed Handguns with or without a license are not permitted at the American Airlines Center."); Press Release, State Fair of Texas, State Fair of Texas Announces Safety & Security Measures for 2024 Event (Aug. 8, 2024), https://perma.cc/S73Y-8738 ("the State Fair of Texas prohibits fairgoers from carrying all firearms . . . anywhere on the fairgrounds including Cotton Bowl Stadium"); AT&T Stadium, Bag Policy, "Prohibited Items," https://perma.cc/UJF4-JL49.

[3] *See* "Possession of Firearms and Weapons," Dallas ISD Employee Handbook, at 41, https://www.dallasisd.org/departments/human-capital-management/departments/policy-and-compliance/employee-handbook ("Employees, visitors, and students, including those with a license to carry a handgun, are prohibited from bringing firearms . . . onto school premises . . . or any grounds or building where a school-sponsored activity takes place.") (last visited Aug. 12, 2026); "Possession of Firearms and Weapons," Fort Worth ISD Employee Handbook 2025–2026, at 60, https://www.fwisd.org/departments/employee-services/employee-handbook (same) (last visited Aug. 12, 2026).

universities.[4] And although state universities permit licensed carry on campus, Tex. Gov't Code § 411.2031, they remain free to restrict carrying at sporting events, *id.* § 411.2031(d-1). Last but not least, businesses that primarily profit from on-premises consumption of alcohol—i.e., 51-percent establishments—remain free to, and have an incentive under Texas law to, prohibit on-premises firearm possession due to the risk of civil liability in the event a firearm is discharged. *See*, *e.g.*, *Flashdancer, Inc. v. Fulcher*, No. 05-21-00070-CV, 2022 WL 1401438, at *3 (Tex. App.—Dallas May 4, 2022, no pet.) (affirming common-law negligence judgment against a 51-percent establishment that failed to search bags for firearms, leading to discharge on the premises). Accordingly, even if Director Martin were to be enjoined, the evidence shows that private parties independently can (and do) restrict carry rights.

Plaintiffs argue (at 11–12) that redressability requires only that a favorable order provide them partial relief, not perfect relief. The district court reasoned along the same lines. ROA.907. But that argument does not work. First, it fails to account for the fact that all enforcement of the challenged laws comes from local law enforcement and private owners and operators, not DPS. Because judicial remedies operate only with respect to "specific parties" and do not operate "on legal rules in the abstract," enjoining an official who does not enforce the challenged laws does not even provide partial redress. *See California*, 593 U.S. at 672 (citations omitted). Second,

[4] *See*, *e.g.*, Southern Methodist University, University Policy Manual, "Weapons," https://perma.cc/RZ2F-2HJ9 ("the University prohibits the possession of any dangerous weapon, or facsimiles of dangerous weapons, (either openly or in a concealed manner) within all University property . . . and any grounds or building on which University activities are conducted").

it fails to address the Supreme Court's decision in *Murthy* or this Court's decision in *Dobbin*. This Court should follow *Murthy* and *Dobbin* in resolving this appeal and hold that Plaintiffs did not show redressability.

Plaintiffs argued below that the *Murthy* rule does not apply here because private property owners "have no choice" but to prohibit firearms. ROA.217. Plaintiffs suggest that, if given the choice, perhaps some property owners would permit them to carry firearms. The argument is unsuccessful for two reasons. First, under *Murthy* and *Dobbin*, the point is that private parties *can* restrict Plaintiffs' right to carry, not that they *will* do so. *See Murthy*, 603 U.S. at 73 (they "remain free to enforce"). The fact remains that owners and operators of racetracks, 51-percent establishments, and sports venues, like any other private party, remain free to prohibit Plaintiffs from possessing firearms on their property regardless of whether Plaintiffs enjoin Director Martin from enforcing the three challenged laws. *See* Tex. Penal Code §§ 30.05–30.07, 46.15(o); *Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, 2026 WL 2209133, at *4, *7 (5th Cir. July 31, 2026) (en banc) (observing that "property owners in Texas . . . may eject any unwanted visitor from their property" and "are free to exclude . . . licensed gun carriers"). In the Supreme Court's words, Plaintiffs lack redressability because these private parties "*remain free* to enforce, or not to enforce" prohibitions on the right to carry. *Murthy*, 603 U.S. at 73 (emphasis added). Second, Plaintiffs' speculation about what private parties may or may not do fails to carry their burden to support redressability at summary judgment with evidence. *See* Fed. R. Civ. P. 56(c)(1); *California*, 593 U.S. at 675; *Lujan*, 504 U.S. at 561.

Finally, Plaintiffs argued below that the Second and Ninth Circuits were correct to find standing even when private property owners independently could restrict possession on premises. ROA.220 (citing *Antonyuk v. James*, 120 F.4th 941, 1042 (2d Cir. 2024), and *Wolford v. Lopez*, 116 F.4th 959, 992–993 (9th Cir. 2024), *reversed and remanded*, No. 24-1046, 2026 WL 1825723 (U.S. June 25, 2026)). But regardless of what those courts held, this Court should follow the Supreme Court and its own case law in *Murthy* and *Dobbin*.

Because (1) Director Martin does not enforce the challenged laws, (2) local law enforcement can enforce the laws, and (3) private parties can restrict Plaintiffs' right to carry, Plaintiffs cannot meet their burden to show that an injunction against Director Martin is likely to redress Plaintiffs' constitutional injury.

## III. Plaintiffs Waited Too Long to Seek Leave to Amend.

Plaintiffs conclude their brief (at 50–54) by arguing that the district court erred in denying them leave to amend their complaint to address the jurisdictional defects in their complaint. But under the specific scheduling circumstances presented to it, the district court's decision was not an abuse of discretion, and this Court should not set a precedent holding otherwise.

**A.** Under Rule 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave," although the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this bias toward permitting amendment, a "district court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *United States ex*

*rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014). Further, this Court has held that "[a] party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990). Rule 15, however, is not the only rule that applies in this case.

Under Rule 16, once a scheduling order has issued, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When a party seeks leave to amend pleadings *after* a scheduling order has issued, "Rule 15 is superseded by Rule 16." *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 292 (5th Cir. 2024); *see also*, *e.g.*, *Buchanan v. Wal-Mart Stores, Inc.*, 834 Fed. App. 58, 61 (5th Cir. 2020) (per curiam) (same); *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (same). In evaluating whether a plaintiff satisfies the good-cause standard, courts will consider (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the proposed amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). And in evaluating whether the district court abused its discretion, this Court tends to adopt a somewhat deferential posture, noting that the trial court "is far closer to the parties than" the appeals court. *Newsome v. Int'l Paper Co.*, 123 F.4th 754, 766 (5th Cir. 2024).

**B.** The timeline confirms that the district court did not abuse its discretion in denying Plaintiffs leave to amend. *See Mayeaux v. La. Health Serv. & Indem. Co.*, 376

F.3d 420, 427 (5th Cir. 2004) (evaluating whether leave should be granted "in light of the procedural history and posture of the case"). The facts speak for themselves.

For reasons their own, Plaintiffs elected to file their complaint naming the DPS Director as the only defendant. ROA.12. After the answer was filed, the district court suggested that the parties consider proceeding directly to summary-judgment briefing since the case did not appear to present any factual issues. ROA.78. The court ordered the parties to meet and confer regarding its proposal and invited the parties to submit objections to the proposal. ROA.78. The parties agreed to the suggestion and proposed schedules for summary-judgment briefing. ROA.79–80. The district court accepted the parties' agreement and issued its scheduling order. ROA.83.

Plaintiffs did not propose seeking leave to amend when the district court raised concerns about the lack of adversity on April 22, 2025. ROA.176–177. Nor did they suggest moving to amend in their response to the district court's proposal to appoint an amicus on April 29, 2025. ROA.178–179. Instead, Plaintiffs waited until after the Amici had been appointed, ROA.181, to suggest in their opposition to summary judgment that they might seek leave to amend to cure the justiciability problems on May 14, 2025, ROA.220–221. Plaintiffs then filed a document on May 15, 2025, announcing their intent to seek leave to amend to cure the jurisdictional defects in their complaint, ROA.223–224, but *still* did not file their motion for leave. Plaintiffs elected to finish briefing on the motions for summary judgment, which concluded on May 28, 2025, ROA.8–9, then waited *another* month before filing a motion seeking leave to amend on June 26, 2025, ROA.264.

Plaintiffs proposed to name and serve eleven new defendants—ten local officials along with the Executive Director of the Texas Alcoholic Beverage Commission—and added several new statutes regarding enforcement authority. *See* ROA.297–315. Plaintiffs insisted, however, that the amendments were unnecessary, arguing to the district court that "the State's jurisdictional arguments are meritless and Plaintiffs could proceed against the Department of Public Safety [sic] as the sole Defendant." ROA.269; *see also* ROA.224 (similar).

After receiving dueling briefing and holding a hearing on the amendment issue, the district court denied Plaintiffs' motion. Although the district court's order does not specifically mention either Rule 15 or 16, its reasoning tracks the good-cause factors. The court pointed out that Plaintiffs had *agreed* to proceed with dispositive motions months earlier. The court also held that Plaintiffs' proposal to add eleven new defendants and then re-brief the justiciability issues came too late and would prejudice Director Martin. *See* ROA.362.

Under these particular facts, there was no abuse of discretion. The district court properly considered the parties' agreement to proceed straight to briefing, Plaintiffs' delay in seeking amendment, the importance—or the lack thereof, as Plaintiffs have consistently maintained—of the proposed amendments, and the prejudice to Director Martin (and the Amici). *See S&W Enters.*, 315 F.3d at 536. Significantly, Plaintiffs proposed to add and serve eleven new defendants, without any evidence that any of them enforce the challenged laws as a matter of practice, yet conceded that adding the new defendants would not impact the justiciability analysis. ROA.269; *see Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 771

(5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile."). The district court did not abuse its discretion in accepting Plaintiffs' representation that amendment would serve no purpose except to add more parties unnecessarily. *See Stewart v. City & Cnty. of San Francisco*, No. 22-16018, 2023 WL 2064162, at *1 (9th Cir. Feb. 17, 2023) ("[T]he district court did not err by taking Appellants at their word.").

This Court should give special consideration to the fact that the district court took the extra steps of flagging the lack-of-adversity problem for Plaintiffs relatively early in the case, permitting an extra round of briefing on justiciability, ROA.176–177, and holding a hearing on the proposed amendments, ROA.320, noting that the trial court "is far closer to the parties than" this Court, *Newsome*, 123 F.4th at 766. This Court should also afford special weight to the fact that Plaintiffs sought leave to amend specifically to defeat summary judgment, a situation in which courts are especially skeptical of permitting amendment. *See Overseas Inns*, 911 F.2d at 1151.

Accordingly, the district court did not abuse its discretion.

**C.** Plaintiffs' arguments are unconvincing.

Plaintiffs argue (at 51–52) that Rule 15(a) has a general bias toward permitting amendment. *See* Fed. R. Civ. P. 15(a)(2) (courts should "freely give leave" to amend "when justice so requires"). But "[a]lthough Rule 15 evinces a bias in favor of granting leave to amend, it is not automatic." *In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (internal quotation marks and footnotes omitted). Plaintiffs also overlook that Rule 16 controls this case and that courts are reluctant to permit amendment just so that a plaintiff can escape summary judgment. *See Shaw*, 93 F.4th at 292 (Rule

16 guides the analysis, not Rule 15); *Overseas Inns*, 911 F.2d at 1151 (courts require more when a plaintiff tries to use amendment to escape summary judgment).

Plaintiffs argue (at 52) that the district court "exceeded the bounds of appropriate discretion" because they moved to amend "early in the case" and "promptly" suggested amending their complaint only "eight months after filing suit" and "seven weeks after the court appointed *amici*" in response to the district court's concerns about lack of adversity. Respectfully, however, the district court was properly within its discretion to find that Plaintiffs were neither early nor prompt—particularly when the court flagged the lack of adversity early in the parties' briefing and Plaintiffs insisted that amendment would not cure any defects anyway.

Plaintiffs argue (at 53) that, contrary to the district court's finding, there would have been no prejudice in permitting amendment because the Second Amendment issues would be largely the same against their eleven new governmental defendants. But what Plaintiffs miss is that the prejudice results from their scattershot expansion of the *justiciability* issues involving their eleven new defendants and new theories of enforcement—the very subject of the parties' months-long briefing in support of their dueling motions for summary judgment. Again, the district court acted well within its discretion in taking Plaintiffs at their word when they said that adding the new defendants and issues would not affect the justiciability analysis. *E.g.*, ROA.269.

Plaintiffs argue (at 53) that a party's moving for summary judgment does not automatically "extinguish[] a plaintiff's right to amend a complaint." That is true as an abstract principle of law. "[A] pending motion for summary judgment does not *in itself* extinguish a plaintiff's right to amend a complaint." *Little v. Liquid Air Corp.*,

952 F.2d 841, 846 n.2 (5th Cir. 1992) (citing *Zaidi v. Ehrlich*, 732 F.2d 1218, 1220 (5th Cir. 1984)), *aff'd in relevant part on reh'g en banc*, 37 F.3d 1069, 1073 n.8 (5th Cir. 1994). Nevertheless, "the fact that a defendant has filed a motion for summary judgment is *significant* in the determination whether a plaintiff's subsequent motion to amend is timely." *Id.* (emphasis added). Plaintiffs thus fail to show an abuse of discretion with this argument.

Plaintiffs argue (at 53–54) that this is "not a situation where one side sought to alter their factual theories in response to the other side's showing in a summary judgment motion" because "the proposed amendment would not have affected the parties' arguments *vis-à-vis* each other." Not so. In addition to adding new justiciability issues with respect to each of the eleven proposed additional defendants, Plaintiffs' proposed amendment would have added new justiciability theories and allegations as to Director Martin in response to his summary-judgment arguments. ROA.302.

Finally, Plaintiffs appear (at 10, 50) to blame Director Martin for their failure to spot the justiciability issues. But that does not explain their failure to timely move for leave to amend promptly after the court flagged the issues, or until *after* the parties finished briefing and the district court had appointed the Amici. More importantly, as this Court has held, that Plaintiffs discovered problems with their complaint during summary-judgment briefing "is not a sufficient explanation" under Rule 16(b). *Newsome*, 123 F.4th at 766. "[M]ere inadvertence on the part of the [Plaintiffs], even [if] coupled with the absence of prejudice . . . is insufficient to establish good cause." *Id.* at 767 (internal quotation marks omitted). "Indeed, under Rule 16(b), 'inadvertence' is 'tantamount to no explanation at all.'" *Id.* (citation omitted).

## Conclusion and Prayer

For these reasons, this Court should vacate and remand with instructions to dismiss Plaintiffs' complaint.

Respectfully submitted.


Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ Matthew M. Hilderbrand
Matthew M. Hilderbrand
Assistant Solicitor General
Matthew.Hilderbrand@oag.texas.gov

*Counsel for Appellee*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,794 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned for viruses and is free of viruses.

/s/ Matthew M. Hilderbrand
Matthew M. Hilderbrand