**No. 26-10302**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

Charles Ziegenfuss; David Montgomery; Brian Robinson; Firearms Policy Coalition, Incorporated,
*Plaintiffs – Appellants*,

v.

Freeman Martin, in His Official Capacity as Director and Colonel of the Texas Department of Public Safety,
*Defendant – Appellee.*

---

On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division, Case No. 4:24-CV-1049

---

# BRIEF OF HARRIS COUNTY, TEXAS, HARRIS COUNTY SHERIFF'S OFFICE, DISTRICT ATTORNEY SEAN TEARE, AND PRECINCT 1 CONSTABLE ALAN ROSEN *AS AMICI CURIAE* IN SUPPORT OF APPOINTED AMICI CURIAE AND AFFIRMANCE

---

ABBIE KAMIN
Harris County Attorney
Abbie.Kamin@harriscountytx.gov

NEAL A. SARKAR
First Assistant County Attorney
Neal.Sarkar@harriscountytx.gov

LISA LUZ PARKER
Division Director
Appellate & Civil Rights
Lisa.Parker@harriscountytx.gov

EDWARD SWIDRISKI
Senior Assistant County Attorney
Edward.Swidriski@harriscountytx.gov

OFFICE OF THE HARRIS COUNTY ATTORNEY
1010 Lamar, 11th Floor
Houston, Texas 77002
(346) 286-4735

*Attorneys for Amici Curiae*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fifth Circuit Rule 29.2, the following entities and persons have an interest in this amicus brief and support affirmance of the District Court's judgment.

- Harris County, Texas
- Harris County Sheriff's Office
- Harris County District Attorney Sean Teare
- Harris County Precinct 1 Constable Alan Rosen

/s/ *Lisa Luz Parker*
LISA LUZ PARKER

## TABLE OF CONTENTS

SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES .................... ii

TABLE OF CONTENTS .......................................................................... iii

TABLE OF AUTHORITIES ........................................................................iiv

STATEMENT OF INTEREST OF AMICI CURIAE..........................................1

INTRODUCTION .........................................................................................3

ARGUMENT.................................................................................................5

A. Texas Penal Code § 46.03(a) reflects democratically enacted gun regulations that fulfill the state's obligation to protect its residents. ................................5

1. The Texas legislature has consistently supported prohibiting firearms through Section 46.03(a)(4), (7), and (8). ................................................ 6

2. Demonstrating that the provisions of Section 46.03(a) are effective, gun violence at prohibited places in Harris County are not common. .............. 8

B. Without the three Section 46.03(a) provisions, law enforcement would lose an effective tool that prevents gun violence and protects the public. ...........10

1. Demonstrating that these provisions are effective, incidents of gun violence at prohibited places in Harris County are not common. .............10

2. Section 46.03(a)(4) and (8) demonstrate a longstanding tradition to regulate firearms at sensitive locations due to alcohol use, gambling, and the presence of vulnerable populations. .................................................15

CONCLUSION............................................................................................18

CERTIFICATE OF SERVICE.......................................................................19

CERTIFICATE OF COMPLIANCE................................................................ 20

## TABLE OF AUTHORITIES

### Cases

*District of Columbia v. Heller*,
554 U.S. 570 (2008)....................5

*United States v. Salerno*,
481 U.S. 739 (1987)....................5

### Statutes

Act 1986, 69th Leg., 2nd C.S., ch. 19, 1986 Tex. Gen. Laws 48.................... 6

Act 1989, 71st Leg., R.S. ch. 749, § 2, 1989 Tex. Gen. Laws 3332.................... 6

Act 1995, 74th Leg., ch. 229, § 3, 1995 Tex. Sess. Law Serv. 229....................7

Act 1997, 75th Leg., ch. 165, 1997 Tex. Sess. Law Serv. 165....................7

Tex. Gov't Code § 411.204.................... 8

Tex. Penal Code § 30.06....................7

Tex. Penal Code § 30.07....................7

Tex. Penal Code § 46.02....................13

Tex. Penal Code § 46.03.................... 9

Tex. Penal Code § 46.05.................... 9

Texas H.B. 1927, 87th Leg., R.S. (2021).................... 6

Texas Penal Code § 46.03....................passim

### Other Authorities

*4 people shot, 1 person dead after shootout at sports bar on Westheimer, Harris Co. deputies say,* ABC 13 (April 10, 2022)....................12

Adam Coleman, *NRG Stadium a gem of a venue for high school football teams*, Houston Chronicle (Nov. 24, 2017)....................15

Alexandra Kanik, *Data shows these are Houston's booziest neighborhoods and the best places for bar-hopping*" Houston Chronicle (July 19, 2022) ............................12, 13

Brianna Willis, *Man killed, sister injured in shooting while leaving a nightclub in southwest Houston, HPD says*, ABC 13 (Nov. 28, 2025) ......................................12

Brianna Willis, *Shooter on the run after critically injuring man outside nightclub on Washington Avenue, HPD says*, ABC 13 (Feb. 9, 2026).......................................12

Gun Violence Solutions at Johns Hopkins Bloomberg School of Public Health and the Consortium for Risk-Based Firearm Policy (2023), *Alcohol misuse and gun violence: An Evidence-Based Approach for State Policy*........................................... 11

*Harris Co. Pct. 4 deputy constable shot to death, 2 other deputies wounded at N. Freeway nightclub*, ABC 13 (Oct. 18, 2021)..........................................................................3

Harris County Sheriff's Office Department Policy No. 242 ..................................14

House Comm. on Public Safety, Bill Analysis, Tex. S.B. 60, 74th Leg., R.S. (1995)................................................7

Jamie E. Galvan, *Bar owner killed trying to stop someone from entering the lounge, HCSO says*, KHOU 11, (Nov. 24, 2025)...................................................................12

Ned Levine, *et al.*, *Understanding the Risk of Firearm Violence in the Houston Area*, Rice University's Baker Institute for Public Policy (2023) .................................10

Senate Rsch. Ctr., Bill Analysis, Author's/Sponsor's Statement of Intent, H.B. 1927, 87th Leg., R.S. 2021 ...................................................................... 6

Tex. Att'y Gen. Op. No. LO-96-009 1996 WL 98985 (1996) ................................17

## STATEMENT OF INTEREST OF AMICI CURIAE

Harris County, Texas[1] has over five million residents, making it the most populous county in Texas and the third most populous county in the United States. The county seat is Houston, which is the largest city in the state and the fourth largest in the country. Every day, residents and visitors from across the nation and world attend sporting events, such as an Astros baseball game, national championship game, or World Cup game, bet on live horse racing, or visit any of the numerous bars and nightclubs in the county.

To protect these residents and visitors, various law enforcement agencies cover the 1,707-square-mile county. With nearly 5,000 employees, the Harris County Sheriff's Office (the "Sheriff's Office") is the largest sheriff's office in Texas and the third largest in the country. The Sheriff's Office is the primary law enforcement agency for the approximately two million people living in unincorporated areas of the county. Harris County also has eight Constable's Offices, including Precinct 1, which is led by Constable Alan Rosen, that cover the entire county. Their deputies work collaboratively with other area law enforcement by responding to calls, investigating criminal activity, and patrolling neighborhoods.

---

[1] Pursuant to Fed. R. App. P 29(a)(4)(E), counsel for all parties have consented to the filing of this brief. Amici certify that their counsel authored this brief in whole; that no counsel for a party authored this brief in any respect; and that no person or entity, other than Amici and their counsel, contributed monetarily to this brief's preparation or submission. Fed. R. App. P. 29(a)(4).

Together, these offices prevent crime, enforce Texas gun laws in the community, and benefit from the existing laws that deter crimes every day. They also work closely with the District Attorney's Office, led by District Attorney Sean Teare, that prosecutes crimes involving the unlawful carry of weapons into prohibited places and secures justice for victims.

Amici curiae—Harris County, the Sheriff's Office, District Attorney Sean Teare, and Constable Alan Rosen—are uniquely positioned to address the interests of their residents and the Texas laws that they uphold every day. Amici have a substantial interest in supporting and enforcing sensible gun regulations within the contours of the Second Amendment. This is especially true here where the relevant gun laws protect residents in sensitive locations where alcohol use and gambling are prevalent and where vulnerable populations, like families and children, patronize.

Thus, Amici submit this brief to support the position of Court-Appointed Amici Curiae and the judgment of the District Court.

## INTRODUCTION

On October 16, 2021, at approximately 2 a.m., three Harris County constable deputies were working off-duty security for a nightclub when they responded to a suspected robbery in the parking lot.[2] As they were arresting an individual, an armed person ambushed them from behind and opened fire. All three deputies were shot, and one deputy was killed.

This tragic event illustrates the dangers that deputies face when guns are brought near bars and nightclubs. Crowds of people who are intoxicated and have impaired judgment, along with the dark conditions inside and outside these venues, undoubtedly present risks for deputies responding to disturbances. These risks, however, are exacerbated if patrons are also armed. Intoxicated patrons are more likely to make rash decisions and escalate confrontations. And intoxicated bystanders with impaired judgment are less able to protect themselves from threats of violence.

Recognizing that firearms exacerbate the potential for and impact of violence in sensitive places, like bars and nightclubs, the Texas legislature enacted Texas Penal Code § 46.03(a)(4), (a)(7), and (a)(8). These three provisions, which prohibit firearms in businesses earning at least 51% of their income from alcohol sales,

[2] *Harris Co. Pct. 4 deputy constable shot to death, 2 other deputies wounded at N. Freeway nightclub*, ABC 13 (Oct. 18, 2021), https://abc13.com/post/deputy-shooting-kareem-atkins-constable-mark-herman-crosstimbers/11132427/.

racetracks, and interscholastic and sporting events, prevent armed patrons from even entering these places. Simply put, the risk of gun violence stops at the door. As such, deputies and patrons face significantly less risk of gun violence occurring inside these places.

By passing these three firearm prohibitions, the Texas legislature provided law enforcement an effective tool in combatting gun violence and keeping the public safe. While there are numerous bars and nightclubs in Harris County, reports of guns at these prohibited places are uncommon. Thus, the above tragedy is fortunately not a common occurrence. The law is effective as it stands.

But if these provisions of Section 46.03(a) were stricken and patrons were allowed to bring firearms inside places like bars, nightclubs, racetracks, or sporting events, it would greatly burden law enforcement and create substantial risk of deadly shootings. Confrontations inside bars or sporting events frequented by families and children could suddenly escalate to gun violence—placing both responding deputies and bystanders in immediate danger.

Because Section 46.03(a)(4), (a)(7), and (a)(8) represent the will of the Texas legislature and its voters to protect the public, continue a long tradition of prohibiting firearms at sensitive places, and provide law enforcement with an effective tool to deter gun violence, Amici urges the Court to affirm the lower court's decision.

# ARGUMENT

## A. Texas Penal Code § 46.03(a) reflects democratically enacted gun regulations that fulfill the state's obligation to protect its residents.

"The primary concern of every government" is "the safety and indeed the lives of its citizens." *United States v. Salerno*, 481 U.S. 739, 755 (1987). On that basis, "measures regulating handguns" are among the "tools" available to states in protecting the health and wellbeing of their citizens. *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008). Such tools include Section 46.03(a).

Section 46.03(a)(4), (a)(7), and (a)(8) are the result of the democratic process in which Texas voters elected representatives to enact sensible gun regulations. The Texas legislature, in turn, followed a longstanding tradition of prohibiting firearms at three specific places: (1) businesses where at least 51% of their income is generated from alcohol sales, such as bars and nightclubs; (2) racetracks where patrons can bet on live horse racing; and (3) interscholastic and sporting events. Common among these three categories is the sensitive nature of the place because alcohol use and gambling are prevalent or crowds including vulnerable populations, like families and children, form. Indeed, these prohibitions have received broad support in the state.

### 1. The Texas legislature has consistently supported prohibiting firearms through Section 46.03(a)(4), (7), and (8).

When the Texas legislature expanded the right to lawfully carry firearms without a license in 2021[3], it left intact Section 46.03(a)(4), (a)(7), and (a)(8). In fact, Section 2 of the Firearm Carry Act of 2021 states that "persons who are currently prohibited from possessing firearms under state and federal law will not gain the right to possess or carry a firearm under this legislation." Texas H.B. 1927, 87th Leg., R.S. (2021). The legislature was clear in not amending or diluting the provisions of Section 46.03(a). Indeed, since their enactment, the legislature has consistently supported these provisions.

In 1989, the legislature first prohibited firearms on the premises of racetracks. Act 1989, 71st Leg., R.S. ch. 749, § 2, 1989 Tex. Gen. Laws 3332 (codified as Tex. Penal Code § 46.03(a)(4)). Notably, this law went into effect just a few years after Texas legalized gambling on horse racing. *See* Acts 1986, 69th Leg., 2nd C.S., ch. 19, 1986 Tex. Gen. Laws 48. As such, the legislature took prompt action in ensuring that guns were not brought into racetrack venues.

---

[3] Senate Rsch. Ctr., Bill Analysis, Author's/Sponsor's Statement of Intent, H.B. 1927, 87th Leg., R.S. 2021 ("The Second Amendment enshrined the right to bear arms in the United States Constitution. There are concerns that state law infringes on the free exercise of that right, namely by requiring a license, which takes time and money to obtain, to legally be able to carry a handgun. H.B. 1927 seeks to reduce barriers to the free exercise of Texans' constitutional right to bear arms and defend their lives and property by making it legal for individuals who are 21 years of age or older and who can legally possess a firearm to carry a handgun without first obtaining a license.")

Then, in 1995, the legislature prohibited firearms inside businesses that derive 51 percent or more of their income from alcohol, such as bars and nightclubs, and at interscholastic and sporting events. *See* Act 1995, 74th Leg., ch. 229, § 3, 1995 Tex. Sess. Law Serv. 229 (codified as Tex. Penal Code § 46.03(a)(7) and (a)(8)). A few years later, the legislature further strengthen enforcement of the ban by requiring businesses primarily generating income from alcohol sales to "prominently display at each entrance" a sign in both English and Spanish that it is unlawful for a person "to carry a handgun on the premises." Act 1997, 75th Leg., ch. 165, 1997 Tex. Sess. Law Serv. 165 (codified at Tex. Gov't Code § 411.204(a), (c)). This notice thus diminishes any defense by patrons that they were unaware of the ban. *See* Tex. Penal Code §§ 30.06(a)(2) (stating that a licensed holder commits an offense if notice was received that a concealed handgun was forbidden), 30.07(a)(2) (applying to openly carried handguns).

Notably, at the time that the legislature prohibited guns at 51% businesses and sporting events, it simultaneously expanded the right for citizens to carry concealed handguns. Act 1995, 74th Leg., ch. 229, § 3, 1995 Tex. Sess. Law Serv. Ch. 229. In its report on the bill, the Public Safety committee of the Texas House of Representatives acknowledged that "almost 80 percent of voters in a 1994 Republican party referendum supported the issue [of carrying guns]." House

Comm. on Public Safety, Bill Analysis, Tex. S.B. 60, 74th Leg., R.S., p. 10 (1995). Even while "this bill [allowed] handguns to be carried in most public places," it also "prohibit[ed] them from the places that might present unique circumstances such as places that sell alcohol or sporting events." *Id.* 13. Employers would also "retain their current authority to regulate their business" through gun prohibitions. *Id.* So, while the Texas legislature expressed the will of voters in expanding their right to carry and bear arms, it also did so by regulating guns at places with these "unique circumstances" of alcohol sales and sporting events.

Thus, the relevant provision of Section 46.03(a) are a lawful and democratic exercise of the State of Texas's police powers that work in conjunction with the Second Amendment right to carry.

**2. Demonstrating that the provisions of Section 46.03(a) are effective, gun violence at prohibited places in Harris County are not common.**

In practice, the relevant provisions of Section 46.03(a) have shown to be considerably effective tools in protecting residents and deterring gun violence. Although Harris County has approximately five million residents, Constable Offices have received only a handful of reports of patrons with guns at bars each year. The Sheriff's Office, which reviewed reports of disturbances at bars, nightclubs, stadiums, and gambling facilities, found only 131 reports of firearms at bars and nightclubs, 7 at gambling facilities, and 4 at arenas, stadiums, and fairgrounds in the

last five years. This is notable considering that the Sheriff's Office serves approximately two million residents. In the same period, the Sheriff's Office, however, received reports of approximately 1,800 assaults and related crimes at these places. In other words, while gun violence is not common, assaults frequently occur at these places. The District Attorney's Office, which receives crime reports from Harris County law enforcement in addition to city law enforcement, like Houston Police, and school districts, has charged nearly 400 people with unlawful carry of a weapon[4] at prohibited places, including schools, in the last five years. Again, this number pales in comparison to the number of residents in the county.

The infrequency of guns at prohibited places is a strong, positive indicator that the relevant provisions of Section 46.03(a) are effective. Thus, law enforcement would be immediately presented with significant challenges if these laws were stricken. Specifically, law enforcement would have to respond to risks of gun violence at places that have not have these risks previously. If patrons were suddenly allowed to bring guns into bars, nightclubs, racetracks, and sporting events, there will undoubtedly be a substantial demand for additional deputies to secure venues, protect patrons, work off duty to provide additional security to these businesses, and

[4] Prohibited weapons include firearms along with knifes, clubs, among others. *See* Tex. Penal Code §§ 46.03(a), 46.05(a). Thus, the number reflects unlawful carry of all weapons.

receive additional training to deal with this new risk of gun violence. This would also require law enforcement offices to staff more deputies, respond to more calls, and provide additional active shooter training. A strain on law enforcement resources would greatly diminish the ability to keep the public safe. In sum, it would cause substantial fiscal burden on law enforcement while also placing their deputies in increased danger of active shootings.

### B. Without the three Section 46.03(a) provisions, law enforcement would lose an effective tool that prevents gun violence and protects the public.

#### 1. Demonstrating that these provisions are effective, incidents of gun violence at prohibited places in Harris County are not common.

Like lawmakers at the Founding and during Reconstruction, legislators today responded to the special dangers posed by combining guns and alcohol in crowded social settings by enacting Section 46.03(a)(7). Indeed, the dangerous connection between gun violence and alcohol use is well documented. For instance, the Rice University Baker Institute for Public Policy found that between 2018-2021 29% of all firearm crimes in Harris County occurred within 300 feet of an alcohol-serving business.[5] This link is unfortunately not unique to Harris County. The John Hopkins Bloomberg School of Public Health has reported that nationwide an estimated one

[5] Ned Levine, *et al.*, *Understanding the Risk of Firearm Violence in the Houston Area*, Rice University's Baker Institute for Public Policy (2023), https://www.bakerinstitute.org/research/understanding-risk-firearm-violence-houston-area (last visited Aug. 18, 2026).

in three individuals who committed homicide with a firearm had been heavily drinking.[6] And alcohol use does not just impact the shooter. Thirty percent of firearm-involved homicide victims had also been heavily drinking at the time they were killed.[7] In effect, allowing guns into bars and nightclubs, especially in one of the most populous counties, results in increased risks of deadly violence.

As previously discussed, *supra* Part A, bars and nightclubs are already environments where assaults not involving firearms are common. If guns were allowed inside these businesses, tense confrontations would escalate to shootings inside the venue. The approximately 1,800 assaults reported by the Sheriff's Office in the last five years would likely have had deadly outcomes for patrons and responding deputies if guns were present. These venues also tend to be dimly lit and crowded with intoxicated patrons, who are less able to defend themselves or avoid the danger. As such, mere verbal arguments or fistfights would lead to deadly shootings of bystanders.

In fact, recent incidents at bars and nightclubs show that when patrons have easy access to guns, altercations can lead to deadly violence. It is not uncommon for

---

[6] Gun Violence Solutions at Johns Hopkins Bloomberg School of Public Health and the Consortium for Risk-Based Firearm Policy (2023), *Alcohol misuse and gun violence: An Evidence-Based Approach for State Policy*, https://publichealth.jhu.edu/sites/default/files/2023-05/2023-may-cgvs-alcohol-misuse-and-gun-violence.pdf (last visited Aug. 18, 2026).
[7] *Id.*

confrontations that begin inside a bar or nightclub to lead to shootouts in the parking lot where patrons can access the guns they have kept in their vehicles. Take for example one deadly incident in Houston in 2022. A fight occurring inside a sports bar spilled into the parking lot where three people pulled out guns and exchanged gunfire.[8] Four people were shot and one person died. At least two shooting victims were believed to be bystanders. Unfortunately, this is not an isolated incident.[9] In all these cited incidents, patrons escalated confrontations outside bars or nightclubs by pulling out their guns.

The presence of guns inside sensitive places, like bars and nightclubs, increasing the risk of deadly violence is especially true for a place as large as Harris County. In 2022, there were more than 5,200 active liquor licenses issued to Harris County businesses.[10] In Downtown Houston alone, there were 102 establishments

---

[8] *4 people shot, 1 person dead after shootout at sports bar on Westheimer, Harris Co. deputies say,* ABC 13 (April 10, 2022), https://abc13.com/post/five-people-shot-shootout-al-sports-bar-man-killed/11729695/.

[9] *See e.g.*, Brianna Willis, *Shooter on the run after critically injuring man outside nightclub on Washington Avenue, HPD says*, ABC 13 (Feb. 9, 2026), https://abc13.com/post/shooter-run-critically-injuring-man-outside-nightclub-washington-avenue-hpd-says/18566211/; Brianna Willis, *Man killed, sister injured in shooting while leaving a nightclub in southwest Houston, HPD says*, ABC 13 (Nov. 28, 2025), https://abc13.com/post/man-killed-woman-hurt-following-parking-lot-shooting-southwest-houston-hpd-says/18221725/; Jamie E. Galvan, *Bar owner killed trying to stop someone from entering the lounge, HCSO says*, KHOU 11, (Nov. 24, 2025), https://www.khou.com/article/news/crime/katy-freeway-bar-owner-shooting-houston/285-c8cbed4c-8ac9-4856-be4a-5e657ebca1b8.

[10] Alexandra Kanik, *Data shows these are Houston's booziest neighborhoods and the best places for bar-hopping*" Houston Chronicle (July 19, 2022) https://www.houstonchronicle.com/news/houston-texas/article/Houston-neighborhods-most-bars-17314653.php.

with active liquor licenses per square mile.[11] The number and density of alcohol-serving businesses in the county only emphasize the need for gun regulations that prevent violence.[12] Otherwise, existing law enforcement staffing shortages would worsen with the additional support needed to protect patrons from gun violence at these businesses.

Yet, Plaintiffs suggest that the location-based firearm prohibition is overbroad considering the Texas law that prohibits carrying firearms while being "intoxicated" (Br. at 35). This contention fails to consider the practical realities of enforcement. Currently, bar owners are required to post signs notifying patrons of the firearm prohibition. If the firearm prohibition only reached "intoxicated" patrons, enforcement would be crippled. In that event, bar owners and staff would need to determine when the patron has reached the level of "intoxicated" under Texas Penal Code § 46.02(a-6)(1). Would a bar employee have to wait until armed patrons are obviously intoxicated before they are removed from the bar or law enforcement is called? This would undoubtedly place bar staff and patrons in danger if the

---

[11] *Id.*

[12] Plaintiffs' Brief (at 7) notes that Texas is only one of 14 states that prohibit guns at bars and restaurants. But this contention fails to acknowledge that this group of 14 states includes the most populous states (and four states with the most populous cities in the country)—New York, California, Illinois, Texas, and Florida. The suggestion that Texas is in the "distinct minority" ignores the fact that a populous state or city will likely have many more bars and restaurants, and thus, more inherent risks of gun violence at these businesses.

intoxicated armed patron lashes out or refuses to leave. At its root, Section 46.02(a-6)(1) is a reactive prohibition that requires the danger—intoxication—to materialize before law enforcement can intervene. By contrast, Section 46.03(a)(7) proactively stops the risk of intoxicated and armed patrons by denying them entrance.

Plaintiffs further assert that they will not drink alcohol if allowed to bring their guns into bars (Br. at 6-7). But not even Harris County Sheriff's Office deputies, who are selected and entrusted to enforce the law and keep the public safe, are allowed to carry their guns off duty if there is a risk that they may drink. Specifically, the Harris County Sheriff's Office Department Policy No. 242(B)(1), provides that while off-duty, employees may carry an approved firearm.[13] But off-duty employees cannot carry firearms when "under the influence of alcohol or in an environment where they *may* consume alcohol."[14] This policy reflects common sense: alcohol and guns are a dangerous mix. Armed patrons should not put themselves and others at risk if there is a chance that they may drink alcohol. While Plaintiffs may avoid drinking alcohol at bars, the Texas legislature has the police power to simply and more effectively prohibit guns at businesses where alcohol use is prevalent.

---

[13] Available at https://hcsopolicy.com/policy/242-duty-to-carry-firearms/.
[14] *Id.* 242(B)(3) (emphasis added).

### 2. Section 46.03(a)(4) and (8) demonstrate a longstanding tradition to regulate firearms at sensitive locations due to alcohol use, gambling, and the presence of vulnerable populations.

Like bars and nightclubs, racetracks and sporting events are crowded places where alcohol is commonly sold and consumed. For example, visitors at Sam Houston Race Park, located in incorporated Harris County, can buy alcohol from several bars and restaurants inside the venue while they place cash wages on horse races. Sporting events at stadiums commonly have concession stands selling alcohol. Allowing guns inside these venues creates similar risks to patrons as bars and nightclubs do.

Further, racetracks and sporting events have an increased risk of gun violence because they generally attract larger crowds and vulnerable populations. Unlike the typical bar or nightclub, venues for racetracks and interscholastic and sporting events have the capacity to hold thousands of patrons. They are also frequented by families and children who come to watch live racing, cheer on their favorite team, and enjoy activities catered to them.

Specifically, racetracks and sporting events attract families and children with promotions and kid-friendly activities. Sam Houston Race Park has recently hosted families on Sundays for "Kids Derby on Sunday Fundays" where children race on the track with stick horses. Families could also attend corgi races. Kids who are 5

years old and younger receive free admission to the race park. Shell Energy Stadium, home to the Houston Dynamo and Dash and Texas Southern University football, has kids' night events where tickets are sold at a discount and team mascots host meet and greets. At Houston Astros games, children 2 years old and younger receive free admission. Reliant Stadium in Houston also hosts events catered to children and students, like youth and high school football events.[15] Children are not only allowed at these venues, but they are welcomed and accommodated. It is unimaginable the risks that the presence of armed patrons would bring to these events.

Despite Plaintiffs' contention that they do not challenge the ban as it is applied to interscholastic or sporting events on campus or when the venue is privately-owned (Br. at 3 and 8), they have brought a facial challenge to Section 46.03(a)(8). Their position conflicts with the simple fact that this provision also prohibits guns at high school tournaments and college bowl games at Reliant Stadium, which is owned by Harris County. As such, if these prohibitions were rendered unconstitutional, patrons could suddenly bring a gun into many more sporting events with large crowds of students and children. This is the exact type of risk that the Texas legislature, and its voters, prevented with Section 46.03(a)(8).

---

[15] *See* Adam Coleman, *NRG Stadium a gem of a venue for high school football teams*, Houston Chronicle (Nov. 24, 2017), https://www.chron.com/sports/highschool/article/NRG-Stadium-a-gem-of-a-venue-for-high-school-12378888.php ("Any time you can play in a stadium that's hosted two Super Bowls, that's got to be pretty special.").

When the prohibition of guns at interscholastic and sporting events was codified in Section 46.03(a)(8), the law already prohibited guns at schools through Section 46.03(a)(1). But as stated by the Office of the Texas Attorney General, (a)(8) was added to ensure that no guns were brought to sporting events outside the school premises. Tex. Att'y Gen. Op. LO-96-009 1996 WL 98985 (1996). "[I]t appear[ed] that the Legislature did not want anyone carrying firearms to congested areas where families and students were present." *Id.* Such concern continues today.

Sporting events, including those at Reliant Stadium, whether it be a high school football tournament or the Texas Bowl game, are the type of sensitive, crowded places presenting significant risks of gun violence to vulnerable populations. Individuals, like children, and families cannot easily defend themselves or escape confrontations involving guns. Thus, Section 46.03(a)(8) represents both a longstanding tradition and common sense to prohibit firearms at interscholastic and sporting events.

The people of Texas, acting through their democratically elected representatives, chose to enact sensible laws that protect the public from the dangers that arise when firearms enter establishments primarily selling alcohol, venues where gambling is prevalent, or stadiums crowded with families and children. These laws are effective in preventing crime and gun violence for both patrons and law

enforcement. As such, Amici, representing the largest Texas county, support the lower court's judgment.

## CONCLUSION

The Court should affirm the judgment of the District Court.

August 21, 2026

Respectfully Submitted,

ABBIE KAMIN
Harris County Attorney

/s/ *Lisa Luz Parker*
LISA LUZ PARKER
Division Director, Appellate & Civil Rights
Lisa.Parker@harriscountytx.gov

NEAL A. SARKAR
First Assistant County Attorney
Neal.Sarkar@harriscountytx.gov

EDWARD SWIDRISKI
Senior Assistant County Attorney
Edward.Swidriski@harriscountytx.gov

OFFICE OF THE HARRIS COUNTY ATTORNEY
1010 Lamar, 11th Floor
Houston, Texas 77002
(346) 286-4735

*Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2026, I electronically transmitted the attached document to the Clerk of the Court of the Fifth Circuit Court of Appeals using the ECF System of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Lisa Luz Parker*
LISA LUZ PARKER

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 4,009 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity A.

/s/ *Lisa Luz Parker*
LISA LUZ PARKER